BOOTH *v*. DINGLEY.

SPECIFIC PERFORMANCE — CONTRACT OF SALE — ENFORCEMENT
AGAINST THIRD PERSON.

Where the owner of the capital stock of a corporation agreed
to sell it to her son on terms including the reorganization of
the corporation by complainant and the son under a scheme
that should leave the management and a controlling interest
in the corporation in the son, a contract between the son and
complainant, by which he agreed to sell 61 per cent. of the
stock to complainant and reorganize the corporation on a
basis involving the ownership of 61 per cent. of its stock by
complainant, cannot be specifically enforced against the
owner of the stock.

Appeal from Kalamazoo; Adams, J. Submitted January 25, 1907. (Docket No. 105.) Decided April 30, 1907.

Bill by Ralph H. Booth against Edward N. Dingley and others for the specific performance of a contract. From a decree dismissing the bill, complainant appeals. Affirmed.

*William J. Gray* (*Dallas Boudeman*, of counsel), for complainant.

*Osborn & Mills*, for defendants.

MOORE, J. Complainant seeks the specific performance of the terms of a paper, the material parts of which are as follows:

"Memorandum of Agreement.

"For and in consideration of the payment of the sum of $35,000.00 to be paid to me by R. H. Booth, I hereby agree to sell, transfer and set over 61 per cent. of the stock of the Kalamazoo Telegraph Co., owner of the Kalamazoo Evening Telegraph and Semi-Weekly Telegraph, with all of its plant, including two Potter presses and motors and stereotyping outfit, four linotype machines and complete

composing room plant, all office furniture and fixtures and all supplies on hand and in transit and franchises and all property understood to constitute the assets of the said the Kalamazoo Telegraph Company, including also the subscription list, advertising contracts, books of accounts and all that goes to make up the good will of the said newspapers.     *     *     *

"It is understood that I am the owner of, or have power to deliver all the above described property and stock aforesaid.

"I hereby acknowledge receipt of $500 to me in hand paid (receipt given herewith) which shall be forfeited to me in event of the balance of the amount $34,500 not being paid to me by March 5, 1906.

"It is understood that the Kalamazoo Telegraph Company expects to remain in its present building and that for the first year the rental shall not exceed $1,200 for space occupied by it.   Also that it is the sense of our understanding that if it can be arranged satisfactorily as to details of salary, duties, etc., that I shall be the managing editor for one year from date.

"It is understood that the statement of receipts and expenses for the year 1905 given herewith is substantially true and correct.

"It is further understood that the salary of the president shall at no time exceed 3 per cent of the annual gross receipts, and that all other salaries shall be solely for service rendered in accord with business practice.   It is expected that you will reorganize the company with capital increased to one hundred thousand dollars of which you, Ralph H. Booth, shall have 61 per cent. or $61,000, and I to have 39 per cent., or $39,000.   Following this agreement there shall be prepared a bill of sale covering all details of above intentions.

[Signed]          "EDWARD N. DINGLEY.

"Dated February 27, 1906.

"Accepted: RALPH H. BOOTH."

In his answer, Edward N. Dingley made claim that the contract did not correctly express the agreement, and prayed for its reformation; that complainant knew he (Dingley) was not the owner of the stock, and that his power to deliver the same depended upon an agreement acceptable to the owners of the stock, and that they never

saw the memorandum which it is sought to enforce. Salome Dingley, Henry M. Dingley, for himself, and as executor, answered. Among other statements in said answers are the following:

"They deny that they, or either of them, saw or knew of the memorandum of agreement signed by the complainant and Edward N. Dingley, which is attached to the bill of complaint, until after this suit was brought, and they deny that the said Edward N. Dingley had any authority from them, or either of them, to enter into such a memorandum, or said memorandum as affecting them, or either of them, or their stock, or property, in the Kalamazoo Telegraph Company."

The case was heard in open court. The trial judge filed a written opinion, in which he used the following language:

"My opinion is that this court cannot require specific performance of this contract in controversy in this suit for the following reasons:

"*First.* E. N. Dingley was not and is not now the owner of the shares of capital stock in the Telegraph Company which he contracted to sell to complainant; they being owned by Mr. Dingley's mother. She agreed with her son, but not with the complainant, to sell her son her capital stock in the Telegraph Company (she owning substantially all the stock of said corporation which had been issued) for the sum of $23,209 in cash and three notes of $5,000 each. These notes to be secured by $15,000 of the capital stock of the Telegraph Company. Mrs. Dingley made this agreement with her son on the understanding, through her son, E. N. Dingley, that the Telegraph Company would be reorganized by complainant and E. N. Dingley, with a capitalization of $75,000 to $100,000, and that E. N. Dingley was to own a majority of such capitalization. Dingley's contract with complainant stipulated that the company should be reorganized with a capitalization of $100,000, of which amount E. N. Dingley was only to receive $39,000. This was placing Mrs. Dingley in a different position than she had contracted with her son, E. N. Dingley, to be placed in. She agreed to let her stock go to her son, with the express understanding that he was to retain a majority of the stock as his own. This was a vital part of her sale. Perhaps, she

wanted him to remain in the business as a majority, and not minority, stockholder. Perhaps, she would not have consented to sell her son her stock, if she had known he was going to surrender control of the corporation. Perhaps, it was not merely a desire on her part to get all her money out of the corporation. Perhaps, it was her wish that her son should be identified with the business as its head and with power through ownership of stock to dictate the management and policy of the paper. Who could say that she would have sold the stock on these terms, had she known that her son was going to surrender control and management of the paper.

"To do what complainant now wants the court to order—that is, to permit complainant to pay Mrs. Dingley in full for her stock—might be making her do something she never intended to do. If she were a party to the contract, the court might then order her to do just what she had contracted to do; but, not having signed the contract, the court should not put her in a different position than she supposed she would be in when she told her son he could have this stock. To do what complainant asked the court to do with reference to Mrs. Dingley might make her do something she never contemplated. If the court cannot do what complainant asked done with reference to Mrs. Dingley, then complainant has no standing in this court, and for the reason suggested Mrs. Dingley cannot be required to sell her stock, principally because E. N. Dingley and complainant had agreed that Dingley would surrender a majority of the capital stock. The question of whether the corporation was to have a capitalization of $75,000 or $100,000 is not very vital, so long as Dingley retained a majority of the capital stock; but this was not done."

He further found the contract was indefinite. A decree was made dismissing the bill of complaint. The case is brought here by appeal.

It is the contention of the complainant: *First*, that the contract is definite; *second*, that because of its character, the business and property involved, and the purpose the complainant had in view in entering into the agreement, an action at law would not give him an adequate remedy; and, *third*, that, because of the relations of

Edward N. Dingley to his mother and brother, and his correspondence with them resulting in their sending their stock to the defendant bank, and the willingness of complainant to pay therefor, the court may very properly make a decree in favor of complainant.

It is the claim of defendant Edward N. Dingley that the agreement does not embrace all of the agreement between him and Mr. Booth; that it was to be followed by a further agreement covering all the details of their intentions; that provision was to be made for the renting of his building for a term of years and for his employment as managing editor, with absolute control of the editorial policy of the paper; that, when complainant with his counsel from Detroit met him later with another and detailed agreement, it did not contain the provisions it was to contain, and defendant was justified in not going on with the agreement. It was his further claim that complainant had a complete and adequate remedy at law, and that specific performance could not be decreed, for the first reason stated in the opinion of the trial judge. In our view of the case it will be unnecessary to pass upon any but the last of these claims.

Are the relations of Henry M. Dingley, Henry M. Dingley, executor, and Salome Dingley with the complainant, as shown by the record, such as to justify a court in compelling each or either of them to part with their stock to the complainant? So far as the record shows, neither of these parties ever saw Mr. Booth, or ever had any direct communication with him before the suit was brought. The correspondence is somewhat voluminous, and it would serve no good purpose to set it out in full. Upon the part of Mrs. Dingley, it was conducted by her son Henry M. The substance of it was that Edward had a plan of reorganizing the Telegraph Company, retaining a controlling interest therein, and that he would pay his mother for her stock $20,000 down, and execute to her three notes of $5,000 each, payable in one, two, and three years, respectively, at 5 per cent., interest semi-annually,

stock of the new company to be given her as security, and would also pay other debts due to Henry M. and his mother, amounting to $3,209. On March 1st Henry M. sent the stock, duly assigned, also the small notes and checks, to the defendant bank, with instructions as follows:

"You will please deliver the above to Edward N. Dingley, upon payment to you of the sum of $23,209 in cash and the delivery to you of three notes to be signed by Edward N. Dingley for $5,000 each, due in one, two, and three years, respectively, with interest at 5 per cent., due semi-annually; each note to be secured by assigned stock (new) of the Kalamazoo Telegraph Company to an amount equal to the face of the notes; stock to be attached to notes.

"Upon the completion of these payments and the receipt of the three notes, you will please send cash and notes to Salome N. Dingley, Lewiston, Me."

On March 5 1906, Edward N. Dingley wrote Henry M. Dingley:

"The deal is all off. The parties refuse to come to my terms on certain points."

There is not a suggestion in any of the correspondence that the complainant desired to buy Mrs. Dingley's stock, or that Mrs. Dingley desired to sell it to him. In fact, Mr. Booth's name does not appear anywhere in the correspondence. The record also discloses that Mrs. Dingley never saw the written memorandum signed by Mr. Booth and Edward N. Dingley until after this suit was brought, and was in no way a party to such agreement. Edward N. Dingley did not tender the bank the money and notes which were to be delivered to it before the stock should be delivered. Mrs. Dingley had a right to make her own contract for the sale of her stock. The court cannot make another and a different one for her. Without the stock of Mrs. Dingley, it is impossible for Edward N. Dingley to convey to complainant 61 per cent. of the stock of the Kalamazoo Telegraph Company. Under such circumstances, a decree for specific performance will not be

granted.   See *Miller* v. *Smith,* 140 Mich. 524; *Gaines*
v. *Molen,* 41 Ark. 232; *Columbine* v. *Chichester,* 2 Phil.
(Eng.) 27; *Knott* v. *Manufacturing Co.,* 30 W. Va.
790; *Jones* v. *Tunis,* 99 Va. 220; *Kelly* v. *Railroad
Co.,* 74 Cal. 557; *Kennedy* v. *Hazelton,* 128 U. S. 667;
·26 Am. & Eng. Enc. Law (2d Ed.), p. 40, and the many
cases cited in the note.

The decree is affirmed, with costs.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ.,
concurred.