## SHAPERO *v.* PICARD.

1. CONTRACTS—PRELIMINARY TALK PRESUMED TO BE MERGED IN WRITING.

    Preliminary talk and oral negotiations leading up to an agreement in writing, drawn by the vendee in a land contract, in which he consented to the placing of a mortgage upon the property and dictated the terms thereof, are presumed to be merged in the writing.[1]

2. VENDOR AND PURCHASER—FRAUD.

    Vendee's claim that he was fraudulently induced to consent in writing to the placing of a mortgage on the property by the vendor, *held*, not sustained by the record.[2]

3. EVIDENCE—RECORDING OF MORTGAGE EVIDENCE OF PAYMENT OF TAX.

    The recording of a land contract and the mortgage on the property given by the vendor makes manifest that the mortgage tax has been paid (1 Comp. Laws 1915, § 4270) and that the vendee will not be liable therefor.[3]

[1]Contracts, 13 C. J. § 616; [2]Fraud, 27 C. J. § 201; [3]Taxation, 37 Cyc. p. 787.

4. VENDOR AND PURCHASER—VENDOR' HAS RIGHT TO MORTGAGE CON-
VEYED PROPERTY.

The vendor in a land contract has a right to mortgage
the property conveyed without the consent of the vendee,
but in such case, with the vendee in possession and the
contract recorded, the mortgage is subordinate to the
vendee's interest.[4]

5. SAME — MORTGAGING PROPERTY BY VENDOR NO EXCUSE FOR
VENDEE NOT PAYING.

Whether or not vendor secured vendee's consent in writ-
ing to vendor's mortgaging the property, vendee has no
valid excuse for not keeping up his payments.[5]

6. SAME—PRIORITY RIGHTS OF GOOD-FAITH MORTGAGEE NOT DIS-
TURBED BY VENDEE'S CLAIM OF FRAUD BY VENDOR.

A mortgagee relying on the vendee's consent in writing
that a mortgage be placed on the property and that it
be a prior lien superior to the contract, and having no
notice of any claim that said consent was obtained by
fraud, is an innocent holder, and its right to priority
could not be disturbed by a claim that consent was ob-
tained by fraud on the part of the vendor.[6]

7. PARTIES—ASSIGNEE OF CONTRACT NECESSARY PARTY WHERE HIS
RIGHTS AFFECTED.

Where, in a suit by the vendee to enjoin the foreclosure
of a land contract, plaintiff has assigned his contract,
but still claims a beneficial interest therein, the assignee
is necessarily an interested party, and complete adjudi-
cation may not be had unless he is made a party.[7]

8. VENDOR AND PURCHASER—VENDEE IN DEFAULT NOT ENTITLED TO
ENJOIN FORECLOSURE ON GROUND THAT VENDOR MAY DEFAULT
ON MORTGAGE IN FUTURE.

A vendee in possession of the premises, a 27-family apart-
ment building, and in receipt of the entire income there-
from, who is in arrears for a large amount, is not entitled
to a decree enjoining the foreclosure of the land contract
because the vendor may default in making payments on
a mortgage on the property, to the making of which he
gave his consent in writing and dictated its terms, where
no default has occurred, since the court may not decree
as to events which may or may not arise in the future.[8]

[4]Mortgages, 27 Cyc. p. 1037; [5]Vendor and Purchaser, 39 Cyc.
p. 1608 (Anno); [6]Mortgages, 27 Cyc. p. 1037; [7]Injunctions, 32
C. J. § 469; [8]Id., 32 C. J. § 14.

Appeal from Wayne; Shepherd (Frank), J., presiding.    Submitted June 23, 1926.    (Docket No. 26.)
Decided July 1, 1926.

Bill by Samuel Shapero against Frances H. Picard,
L. H. D. Baker, trustee, and the American Life Insurance Company to enjoin the foreclosure of a land contract.    From a decree dismissing the bill, plaintiff appeals.    Affirmed.

*Harold M. Shapero,* for plaintiff.

*Henry H. Roberts,* for defendants Picard and Baker.

*Fred H. Aldrich* and *George E. Leonard,* for defendant American Life Insurance Co.

STEERE, J.   Plaintiff appeals from a decretal order
of the Wayne county circuit court, in chancery, dissolving a preliminary injunction restraining foreclosure of a certain land contract and dismissing his
bill of complaint praying for the same and other relief
in that connection.    The issue was made by defendants' motion in the nature of a demurrer, supported
by affidavits, asking dissolution of the injunction and
dismissal of bill.    On June 25, 1919, plaintiff purchased from defendant Frances H. Picard by land contract a 27-apartment building and lot upon which it
stood, located at the southwest corner of Second avenue
and Brainard street, Detroit, Michigan, known as the
Shakespeare apartments.    Plaintiff at once entered
into possession of said premises and has so continued
since, collecting the rents therefrom.    He made all
payments provided for in the contract as they fell
due and met all other requirements imposed on him
by it until October 1, 1925, but thereafter made no
further payments for the alleged reason that he then
learned his grantor had violated the terms of their
contract by putting an unauthorized mortgage upon
the property.

The contract is set out at length in plaintiff's bill and shows that the purchase price of the property contracted for was $128,000, payable $19,000 down and the balance in quarter annual installments of $2,250 each, "including principal and interest until the full amount of the contract is paid." It is a carefully-prepared instrument in legal form and phraseology with the customary provisions and conditions as to taxes, use, insurance, etc., which need not be detailed, and also contains the following provision:

"Party of the second part (plaintiff) agrees to join in any bank mortgage which party of the first part may place upon said premises."

Supplemental to said provision and "to be a part" of the land contract, a written agreement was prepared by plaintiff's attorney and signed by the parties, on October 12, 1923, by which Mrs. Picard, party of the first part in the land contract, was given the right to mortgage the premises described therein for an amount not exceeding $65,000, to bear interest at not more than 6% per annum, specifying that "said mortgage shall be a lien superior to the within contract, and a first lien on said property." It is also provided:

"That the said party of the first part shall cause to be made all payments of principal and interest on said mortgage, in accordance with its terms, and that upon failure to pay said mortgage, principal or interest, or perform the covenances and conditions contained in said mortgage, all payments of principal and interest upon the within contract shall cease until such time as said payments of mortgage, principal, interest and performance of covenances contained in said mortgage are performed in accordance with the terms contained in said mortgage."

On July 1, 1924, Mrs. Picard mortgaged the property to the American Life Insurance Company for $65,000, payable seven years from date with interest thereon

at the rate of 6% per annum payable semi-annually, with a provision for 7% per annum on all overdue interest or principal from time of its maturity.    On October 3, 1925, she gave a deed of the property to defendant Baker, as trustee, for a stated consideration of one dollar "and other valuable considerations," the actual consideration being a loan of $15,000, received by her from the National Bank of Commerce of which he was vice-president.    With the deed she also assigned her interest in the contract for sale of the property to plaintiff as security for the loan which by its terms was to be liquidated by payments on the contract as they fell due.    Some time before this suit was brought plaintiff assigned his interest in the contract property to one S. R. Kingston as security for a loan, yet retaining a beneficial interest in it. Kingston is not made a party to this suit.    Plaintiff and his assignee having declined or neglected to make further payments on this contract as they fell due, defendants Baker, as trustee, and Mrs. Picard began proceedings to enforce payment by foreclosure of said land contract.    Plaintiff then filed this bill and obtained a temporary injunction restraining their proceedings at law.

Plaintiff is an attorney of ten years' standing.    Both the land contract and supplemental consent to mortgaging the property for $65,000 were prepared by him or under his supervision by his brother who is also an attorney.    He alleges in his bill that Mrs. Picard's son, Russell, acting as her agent, stated to him at the time that the proposed mortgage would be obtained from a mortgage broker named Patterson, was to be for the sum of $65,000, payable within five years from the date, unpaid balances to bear interest at the rate of 6% per annum payable semi-annually, and, relying upon such statements, he was fraudulently induced to sign such consent.    He also avers in his bill

that said defendant, Frances H. Picard, did not arrange through Patterson for the loan to which he had consented but borrowed it elsewhere for a longer period of time and at a higher rate of interest as before stated.

In affidavits of Mrs. Picard and her son, Russell, in support of the motion to dismiss, both positively denied that any such representations were made to plaintiff, but that he was at the time of placing the mortgage fully advised of what was done and made no protest. She further deposed that her son, Russell, had no authority to act as her agent in making any such representations or agreement as stated in plaintiff's bill.

Bottoming his ground for relief on fraudulent representations by which he was induced to consent that said mortgage should be a lien superior to the contract, he further asks that the mortgage should either be declared void or the lien subordinate to the contract because, beyond the consent given, it provides for interest after maturity in excess of 6%, exceeds the sum of $65,000 in that it includes taxes upon the mortgage, an attorney fee and power of sale. He also further alleges that Mrs. Picard is using the income derived from the contract to meet her living expenses and has stated that when the mortgage she gave falls due she intended to give him a deed of the property and let him take care of the mortgage, thereby repudiating the spirit and terms of the contract. This she positively denies in her affidavit accompanying the motion, alleging that on the contrary the mortgage is not now in default and never will be as far as she is concerned, asserts that she is not using the income of the contract to meet her living expenses but is the owner of additional property in Detroit and Cleveland of the value of $100,000 and upwards.

Following submission of the motion in the nature of a demurrer, the trial court filed a formal decree dissolving the injunction and dismissing plaintiff's bill. Whatever the actuating reasons, which are not given, we find no occasion to disturb the result reached.

Plaintiff's claim that he was fraudulently induced to sign the supplemental consent agreement of October 12, 1923, is met by direct denial that the said representations were ever made and a counter showing that the party alleged to have made them had no authority to do so. If made, they were oral, preceded and led up to a written agreement in which all preliminary talk and oral negotiations on the subject are presumed to be merged. Neither are we persuaded that if made plaintiff was fraudulently deceived thereby. He drew the agreement or had it drawn, presumably including everything in it which he deemed important, even to the rate of interest which the mortgage should bear. No interest in excess of the stipulated rate is shown to have ever been paid. The mortgagor was only liable for a greater rate in case of default. No default is shown.

Both defendant Picard's land contract to plaintiff and her mortgage to the American Life Insurance Company have been recorded and by that token it is manifest that the mortgage tax has been paid (1 Comp. Laws 1915, § 4270). No claim is made that plaintiff ever paid or is holden for either.

Plaintiff's claim that his consent to mortgage was violated by its containing a power of sale on foreclosure for default calls for scant consideration. Consent to mortgage would carry with it the right to make a mortgage in form customarily adopted in conveyancing and universally recognized by the courts as valid. Mrs. Picard had the right to mortgage this property without plaintiff's consent. In such case, with the purchaser in possession and his land contract

recorded, the mortgage, while valid, would be subordinate to the interest of the contract purchaser. If plaintiff's contention that his consent agreement is void because obtained by fraud were well founded, he has no valid excuse for not keeping up his payments to her, neither has he if it is valid and he consented in writing that "said mortgage shall be a prior lien superior to the within contract, and a first lien on said property."

The American Life Insurance Company took its mortgage relying on the public record of title and plaintiff's written consent without, so far as shown, any notice or knowledge that it was claimed to have been obtained by fraud, and as an innocent holder without notice could not in any event be disturbed in its right to priority. Plaintiff, an experienced attorney, dictated the terms of this consent and signed it. In the absence of any notice to the contrary the mortgagee had a right to rely on it.

The only party in default in these transactions is the plaintiff, and the only ones suffering from his default are the trustee, Baker, and Mrs. Picard. There is no uncertainty as to the various interests of these parties. Plaintiff has paid about $38,000 on his contract price of $128,000 for this property. He is in possession collecting its income, and is about $7,000 in arrears on his contract. If he met his payments as they fell due they would liquidate her $15,000 indebtedness to the bank before her $65,000 mortgage fell due. This she is obligated to pay, testifies she is able to pay and will pay. He would yet owe her that much on his contract.

We find no occasion to discuss plaintiff's technical contention with citation of numerous authorities that the court should construe his bill of complaint as a bill to quiet title, to remove a cloud upon title, for specific performance, as in the nature of a bill of inter-

pleader, to protect an equitable interest in real estate or bill *quia timet* and to cancel for fraud because given without consideration, for back of all such contentions the bill fails to contain any allegations of present existing injury. All its claims point to matters *in futuro* asking for an anticipatory decree to protect him from what he claims might happen to his detriment but which may never happen. Plaintiff's interest in this property is small compared with that of defendants. He has assigned his contract to Kingston but says he still has a beneficial interest in it. To what extent is not shown, but he has possession of the property and is in receipt of the entire income therefrom. Kingston, as his assignee, is necessarily an interested party and no complete adjudication of this controversy could be made without taking his interest into consideration, and he is not a party to this suit.

But beyond those considerations this court cannot decree as to events which may or may not arise hereafter contingent upon defendant Picard's failing to fulfill on her part, when up to the present she has never been in default. We are of opinion that plaintiff's bill states no existing ground calling for equitable relief.

The decree will stand affirmed, with costs to defendants.

Bird, C. J., and Sharpe, Snow, Fellows, Wiest, Clark, and McDonald, JJ., concurred.