COUSINS *v.* MELVIN F. LANPHAR & CO.

1. VENDOR AND PURCHASER—CONSTRUCTION OF LAND CONTRACT—ASSIGNMENT—AMBIGUITY.

Under record in suit for specific performance of a land contract, from which it appears that bank, as vendor, had prepared or furnished the contract, any uncertainty or ambiguity in the terms thereof should be most strongly construed against the vendor and, so far as the assignees of the vendor's interest or mortgagees thereof are concerned, should be construed favorably to the contract vendees.

2. SAME—CONSTRUCTION OF LAND CONTRACT—POWER TO MORTGAGE.

Paragraph of subdivision of land contract providing that vendor or its assignor might encumber premises with a mortgage in an amount not greater than unpaid balance then due under contract should be construed with another paragraph of same subdivision wherein bank vendor was authorized to convert the land contract into a mortgage and specifically restricting terms thereof to the same as those of the contract in respect to payments and rate of interest as the contract should be read as a whole.

3. SAME—ASSIGNMENT—POSSESSION AS NOTICE.

Assignees of vendor's interest in land contract were chargeable with notice of purchasers' interest therein where latter had been in possession of the property since the inception of the contract upwards of six years before the vendor assigned it.

4. SAME—EXPEDITION OF PAYMENT—MORTGAGES.

Since provision of land contract permitting vendor or its assigns to encumber property with mortgage limited only as to amount then unpaid under land contract must be construed with provision authorizing vendor to convert land contract into mortgage subject to same terms and conditions as land contract, especially as to terms of payment and rate of interest, the pur-

chasers were not required to accept deed subject to mortgage, given by vendor's assignee, which did not permit purchasers to expedite payment of amount due and which did not permit final payment as soon as the land contract did.

5. SAME—TENDER OF UNPAID BALANCE—INTEREST.
   Purchasers under land contract, requiring a monthly instalment of not less than a given sum, who tendered balance unpaid under the contract and by stipulation were admitted to have been ready, willing and able to pay such sum which was not deposited in court, were not required to pay interest accruing subsequent to tender where defendants, the vendor's assignee and its mortgagee, had refused to accept the same or execute deed pursuant to land contract.

SHARPE, J., dissenting.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted October 9, 1945. (Docket No. 26, Calendar No. 43,126.) Decided December 3, 1945.

Bill by Robert G. Cousins and wife against Melvin F. Lanphar & Company, a Michigan corporation, and Occidental Life Insurance Company of California, a foreign corporation, for specific performance of a land contract. Decree for plaintiffs. Defendants appeal. Affirmed.

*Charles Bowles,* for plaintiffs.

*Miller, Canfield, Paddock & Stone (Herman R. Sable,* of counsel), for defendants.

SHARPE, J. (*dissenting*). This is a suit for specific performance of a land contract. The facts have been stipulated. On February 26, 1938, the Highland Park State Bank as seller entered into an executory contract with plaintiffs for the sale of a house and lot in the city of Detroit for the sum of $6,250 with a down payment of $937.50 and the

balance to be paid in monthly instalments of not less than $54 including interest with the proviso that the purchase price should be paid in full within 10 years from date.

The contract also provided:

"4 (a)    That the bank or its assigns may at any time encumber said land by mortgage or mortgages to secure not more than the balance owing hereon at the time such mortgage is executed nor more than 50 per cent. of the purchase money paid and to be paid under this contract, which mortgage or mortgages shall be a first lien upon the land superior to the rights of the purchaser therein, provided notice of the execution of such mortgage shall be sent to the purchaser.    *    *    *

"(d)    If the title of the bank is now or hereafter encumbered by mortgage, the bank (if the maker of the mortgage) or its assigns shall meet the payments of principal and interest thereon as they mature *    *    *    and in the event proceedings are commenced to recover possession or enforce payment of such mortgage because of the bank's or its assigns' default, the purchaser may at any time thereafter while such proceedings are pending encumber said land by mortgage securing such sum as can be obtained upon such terms as may be required and with the proceeds pay and discharge such mortgage *    *    *    and when the sum owing hereon is reduced to the amount owing upon such mortgage or owing to [upon?] any mortgage executed under either of the powers in this contract enjoined, a conveyance shall be made in the form above provided with a covenant by the grantee to assume and pay the same.    *    *    *

"(h)    That the bank at its option may convert this land contract into a mortgage whenever the principal due hereunder has been reduced in an amount satisfactory to the bank, and the purchaser

or any assignee of the purchaser agrees to accept a deed in fulfillment of the contract and to execute a mortgage on the bank's standard mortgage form for the unpaid balance owing on such contract, payable at the same time or times, and at the same rate of interest provided by said contract, and on like terms and conditions as set forth in said contract."

On May 29, 1944, the bank assigned its interest in the land contract and conveyed said land to defendant Melvin F. Lanphar & Company; and at the same time, notified plaintiffs to make future payments to that company. On June 9, 1944, the Lanphar company mortgaged the premises to defendant Occidental Life Insurance Company of California for the amount of the unpaid balance of principal and interest which was $2,874.57. The mortgage provided for monthly payments of $54 with interest at the rate of 6 per cent. On the day that the mortgage was executed, defendant Lanphar company executed a quitclaim deed naming plaintiffs as grantees. The deed recited that plaintiffs assumed and agreed to pay the mortgage. Plaintiffs were not consulted in advance regarding the mortgage or the execution and recording of the quitclaim deed and have refused to be bound by the arrangement. On July 14, 1944, plaintiffs tendered to defendant Lanphar company the sum of $2,892.53 in full payment of the principal and interest owing on said contract and requested defendant to execute a deed in accordance with the terms of the land contract.

The trial court entered a decree reciting:

"1. That under the terms of the land contract involved in this cause the plaintiffs have the right and privilege of paying the full amount of the balance owing on said land contract, and that upon receipt thereof the said seller named in said contract and the defendants herein, as assignees of

the interest of said seller in said contract, are obligated to convey said premises to said plaintiffs free and clear of all encumbrances.

"2. That under the terms of said land contract any mortgage placed on said premises, in addition to the ordinary mortgage provisions, must also contain a provision that the purchasers under said land contract, the same being the plaintiffs herein, shall have the privilege of paying any balance owing thereon whenever they may desire to so do.

"3. That the mortgage referred to in said bill of complaint is not in accordance with the terms of said land contract to the extent that it does not contain a provision permitting plaintiffs to pay the amount owing thereon at such time as they may desire so to do, and is therefore contrary to the rights of the plaintiffs herein, and to that extent illegal and unenforceable as a mortgage lien against said premises.

"4. That plaintiffs are hereby adjudged and decreed to have the right upon payment to said defendants of the amount owing on said mortgage to receive from defendants a full, complete and valid discharge of the same."

Defendants appeal and urge that plaintiffs, having entered into the land contract, consented to the grantor executing a prior mortgage upon the premises; that the burden of writing limitations into the consent given in the land contract rests upon plaintiffs; and that their interest is subordinate to the mortgage which meets the limitations expressed in the land contract.

When plaintiffs entered into the land contract, they agreed to make monthly payments of $54 or more. They also agreed that the bank or its assigns could encumber the premises by mortgage to secure not more than the balance owing on the land contract; and that when the amount due on the land

contract equalled the amount of the mortgage, the land would be conveyed to the purchasers with a covenant by purchasers to assume the mortgage. In the case at bar, the mortgage when executed equalled the amount due on the land contract, but did not provide for payments in excess of $54 per month.

In *Shapero* v. *Picard,* 235 Mich. 481, we said:

"Consent to mortgage would carry with it the right to make a mortgage in form customarily adopted in conveyancing and universally recognized by the courts as valid."

In *Dirr* v. *Hitchman,* 260 Mich. 179, we said:

"In determining the equitable rights of the respective parties, the court is bound by the specific terms of their contract."

Plaintiffs and the bank contracted that the bank or its assigns could mortgage the premises to a third person. In the event that the premises were so mortgaged, the only condition of interest in the case at bar was as to the amount of the mortgage. No mention was made as to how and when the mortgage was to be paid. Plaintiffs had it within their power to name further conditions when the land contract was executed. They did not choose to do so. They may not now complain.

The decree of the trial court should be reversed and plaintiffs' bill of complaint dismissed, with costs to defendants.

NORTH, J. In this appeal, which is from a decree in the trial court granting specific performance to plaintiffs, Mr. Justice SHARPE has written for reversal. I am unable to agree with that result.

Plaintiffs purchased the real property involved in this suit on a land contract in which the Highland

Park State Bank was the vendor. The contract is lengthy, contains a great variety of provisions for the protection of the vendor and the body of it is printed in comparatively small type. It is a fair inference from the record that this contract was prepared by or at least furnished by the bank. Therefore any uncertainty or ambiguity in the terms of the contract should be most strongly construed against the bank as vendor. In that particular any assignee of the bank's interest or any mortgagee possessed of a mortgage encumbrance given by the bank or bank's assignee should be held to be in the same position—*i. e.*, the terms of the contract as against any of such parties should be construed favorably to the contract vendees.

The contract is divided into four subdivisions and the fourth subdivision consists of paragraphs designated (a) to (j) inclusive. Decision of the instant appeal turns upon the construction to be given to paragraphs (a) and (h). They read:

"(a) That the bank or its assigns may at any time encumber said land by mortgage or mortgages to secure not more than the balance owing hereon at the time such mortgage is executed nor more than 50 per cent. of the purchase money paid and to be paid under this contract, which mortgage or mortgages shall be a first lien upon the land superior to the rights of the purchaser therein, provided notice of the execution of such mortgage shall be sent to the purchaser by registered mail after execution thereof and the purchaser will on demand execute any instrument demanded of the bank or its assigns reasonably necessary or requisite to execute or confirm the execution of the foregoing power."

"(h) That the bank at its option may convert this land contract into a mortgage whenever the principal due hereunder has been reduced in an

amount satisfactory to the bank and the purchaser or any assignee of the purchaser agrees to accept a deed in fulfillment of the land contract and to execute a mortgage on the bank's standard mortgage form for the unpaid balance owing on said contract, payable at the same time or times, and at the same rate of interest as provided by said contract, and on like terms and conditions as set forth in said contract.''

These two paragraphs should be construed together and in the light of all the terms of the original land contract, with notice of which as to plaintiffs' rights thereunder the defendants herein are chargeable. If for no other reason, such notice of plaintiffs' rights arises from the fact that they have been in possession of the property since the inception of the contract.

The land contract provided that the unpaid portion of the purchase price was to be paid as follows: ''all of which purchase money and interest shall be paid in instalments of not less than $54 each, payable March 26, 1938, next and not less than the last-named sum monthly thereafter; said payments to be applied first upon interest and the balance on principal. Provided the entire purchase money and interest shall be fully paid within 10 years from the date hereof, *anything herein to the contrary notwithstanding*.'' Under the foregoing provision the purchasers had the right to pay the contract in full at any time a monthly payment fell due. But the mortgage held by the defendant insurance company by its terms is not payable in full within 10 years after the date of the contract; nor under its express terms could plaintiffs pay this mortgage of $2,874.57 with interest at 6 per cent. per annum upon their property at a rate in excess of $54 per month. In other words by the literal terms of the mortgage plaintiffs were prevented from paying for their property as expeditiously as they had the right

to do under the terms of their land contract, of which defendants herein had notice.

Not only should the contract in suit be construed favorably to plaintiffs, for the reason hereinbefore indicated, but the contract should be read as a whole. Both provisions as to the right of the vendor to convert the status of the contract vendor into the status of a mortgagee are in part 4 of the contract. Paragraph (a) of this part 4 of the contract should not be read and construed wholly apart from the other provisions of part 4, particularly the paragraph designated (h). In this latter paragraph it is expressly provided that a mortgage placed on the property by the vendor should be "payable at the same time or times, and at the same rate of interest as provided by said contract, and on like terms and conditions as set forth in said contract." The Lanphar Company is not only the assignee of the bank as contract vendor, but it is also grantee of the bank's title; and thereafter the bank could not exercise any right under (h). But the Lanphar Company could and did in effect exercise the rights provided in (h). The mortgage held by the defendant insurance company violates plaintiffs' rights under the above-quoted portion of the land contract, and the mortgage is also violative of plaintiffs' rights under the provision of the contract wherein it is stated: "Provided the entire purchase money and interest shall be fully paid within 10 years from the date hereof, anything herein to the contrary notwithstanding." The contract was to be paid in full by February, 1948; but the mortgage cannot be paid in full until June, 1949.

The land contract read as a whole clearly gives the vendees the right to pay the purchase price as expeditiously as they may desire. As noted, they are deprived of that right under the terms of the mortgage. Such a result can be sustained only by

lifting out of the contract a limited portion of paragraph (a) of part 4 and disregarding other plain provisions above quoted from paragraph (h) of part 4 of the contract. To so construe the contract would be in violation of the vendees' rights of which defendants are chargeable with notice. Such a construction of the contract pursued to its logical conclusion would, as the circuit judge pointed out, lead to strange and unjust results such as follows: "If the defendants' contention is correct, this mortgage could have read at the rate of $25 per month at 7 per cent. interest and to be paid within 10 years or even 25 years, or a mortgage could have been placed payable at the rate of $100 per month at seven per cent. interest, to be paid within 6 months or 30 days." It would be a strained and unduly harsh construction of the conflicting provisions of this land contract so to hold. The trial court was correct in decreeing that plaintiffs "have the right upon payment to said defendants (defendant life insurance company) of the amount owing on said mortgage to receive from defendants a full, complete and valid discharge of the same."

It is admitted in the record that on July 14, 1944, plaintiffs tendered to defendant Melvin F. Lanphar & Company $2,892.53 as payment in full of the then unpaid portion of the land contract. No complaint is made because of the tender having been made to the Lanphar Company instead of to the mortgagee, the life insurance company. And by stipulation of counsel it is further admitted: "Thereafter plaintiffs have been ready, willing and able to pay said sum at any time but defendants have refused and continue to refuse to accept such payment or to execute said deed." We are not in accord with appellants' contention that the trial court erred in holding that the above tender made by plaintiffs

was, under the circumstances of this case, sufficient to stop subsequent accrual of interest. In the light of the stipulation it is obvious that it would have been an idle ceremony for plaintiffs to have deposited in court the amount tendered because "defendants have refused and continue to refuse to accept such payment." Defendants have no right by refusing payment tendered of the unpaid contract purchase price to compel plaintiffs to continue to pay interest thereon, even though plaintiffs were occupying the purchased premises.

The decree entered in the circuit court is affirmed, with costs to appellees.

STARR, C. J., and CARR, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred with NORTH, J.