# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEDIA ONE COMMUNICATIONS LLC,

       Plaintiff-Appellant,

v

MACATAWA BANK CORPORATION,
COASTAL REAL ESTATE,

       Defendants-Appellees,
and

MACATAWA LEGENDS HOMEOWNERS
ASSOCIATION,

       Defendant.

UNPUBLISHED
July 13, 2017

No. 333153
Ottawa Circuit Court
LC No. 15-004299-CB

---

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

In this action for breach of contract, following a foreclosure and the purchase of real property by defendant Macatawa Bank Corporation ("the bank"),[1] plaintiff Media One Communications, LLC ("Media One") seeks to hold the bank liable for a contract entered into between Media One and the former owner of the property, Partners Fore Development Group, LLC ("PFD"). The trial court granted summary disposition to the bank under MCR 2.116(C)(8). Media One filed a delayed application for leave to appeal, which this Court granted.[2] Because

---

[1] According to Media One's complaint, the bank has since assigned certain property to defendant Coastal Real Estate, a wholly owned subsidiary of the bank. On appeal, the parties do not distinguish between the bank and Coastal Real Estate in terms of their potential liability. For ease of discussion, we will simply refer to "the bank" throughout this opinion; but, our decision should be read to apply equally to Coastal Real Estate.

[2] *Media One Communications LLC v Macatawa Bank Corp*, unpublished order of the Court of Appeals, entered August 29, 2016 (Docket No. 333153).

we conclude that no contractual obligation to pay Media One arose from the bank's consent to the creation of an easement, we affirm.

The present case is a claim for breach of contract involving three documents. The first document, the "Fiber Optic Agreement," is a contract between Media One and PFD, in which Media One agreed to install and maintain a fiber optic network at Macatawa Legends, a housing development being built by PFD. In the Fiber Optic Agreement, PFD agreed to pay Media One for its services. In the second document, also between PFD and Media One, PFD granted Media One an easement to enter the Macatawa Legends property to install, repair, and maintain the fiber optic cables. The easement states that the easement "shall be subject to all of the terms and conditions contained in the Fiber Optic Agreement." Finally, in the third document, the bank—a mortgagee with a recorded mortgage on the property—consented to the creation of the easement and agreed to "honor and recognize" the rights granted by the easement.[3]

PFD failed to pay Media One for its services as set forth in the Fiber Optic Agreement. PFD also defaulted on its mortgage to the bank. As a result, the bank initiated foreclosure proceedings, and the bank subsequently purchased the Macatawa Legends property at a sheriff's sale. Thereafter, Media One filed the current lawsuit against the bank, claiming breach of contract and seeking payment from the bank under the Fiber Optic Agreement.

The basic question posed in this case is whether, considering the documents at issue, the bank's consent to the easement gives rise to a contractual obligation on the part of the bank to pay PFD's obligations to Media One under the Fiber Optic Agreement. We conclude that the bank's consent did not constitute an assumption of PFD's obligations under the Fiber Optic Agreement. Accordingly, we affirm the trial court's grant of summary disposition to the bank under MCR 2.116(C)(8).

## I. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a motion for summary disposition. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 210; 859 NW2d 238 (2014). "Summary disposition under MCR 2.116(C)(8) is appropriate where the complaint fails to state a claim on which relief may be granted."[4] *Id.* (citation omitted). Whether a contract exists is a question of law, which we review de novo. *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67,

---

[3] There are actually three easement documents and three corresponding consents. However, any distinctions between the documents are not relevant to our analysis because the documents contain the same pertinent language.

[4] "In deciding a motion under MCR 2.116(C)(8), a trial court may only consider the pleadings." *Arabo v Mich Gaming Control Bd*, 310 Mich App 370, 389; 872 NW2d 223 (2015). In this case, the Fiber Optic Agreement, the easement, and the consent were attached to the complaint as the basis for Media One's breach of contract claim, meaning that these documents are properly considered in relation to the bank's motion for summary disposition under MCR 2.116(C)(8). *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

75; 854 NW2d 521 (2014). Likewise, the "interpretation of a contract and the legal effect of a contractual clause are questions of law," which we review de novo. *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008).

## II. ANALYSIS

The party claiming a breach of contract "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of Am, NA v First Am Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "The rights and duties of parties to a contract are derived from the terms of the agreement." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 62; 664 NW2d 776 (2003). "The burden is on [the] plaintiffs to show the existence of the contract sought to be enforced, and no presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 549; 487 NW2d 499 (1992), quoting *Hammel v Foor*, 359 Mich 392, 400; 102 NW2d 196 (1960). "It goes without saying that a contract cannot bind a nonparty." *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 80; 811 NW2d 4 (2011) (citation omitted).

Although a contract does not ordinarily bind a non-party, non-parties to a contract may still be held to an agreement by applying "ordinary contract-related legal principals," including assumption of contractual obligations. *Id.* at 81. For instance, a party may agree to assume the liabilities of another, as through a surety or guaranty, in the event that the principal obligee fails to perform. See *Will H Hall & Son, Inc v Ace Masonry Const, Inc*, 260 Mich App 222, 228; 677 NW2d 51 (2003); *Angelo Iafrate Co v Detroit & N Sav & L Ass'n*, 80 Mich App 508, 514; 264 NW2d 45 (1978). However, "[o]rdinary experience teaches that assumption of another's debt is a substantial undertaking, and thus the courts will not assume such an obligation in the absence of a clearly expressed intention to do so." *Bandit Indus, Inc v Hobbs Intern, Inc*, 463 Mich 504, 513; 620 NW2d 531 (2001).

Whether a party has agreed to assume the obligations of another is a question of contract interpretation. *Angelo Iafrate Co*, 80 Mich App at 514. The "primary task in construing a contract is to give effect to the parties' intentions at the time they entered into the contract, which requires an examination of the language of the contract according to its plain and ordinary meaning." *Beck v Park W Galleries, Inc*, 499 Mich 40, 45-46; 878 NW2d 804 (2016). Contracts should be read "as a whole," giving meaning to all terms; *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005); and, "[w]here one writing references another instrument for additional contract terms, the two writings should be read together," *Forge v Smith*, 458 Mich 198, 207; 580 NW2d 876 (1998). "If the language of the contract is clear and unambiguous, it must be enforced as written." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (citation omitted).

Turning to the present case, Media One's contractual right to payment for the installation of the fiber optic infrastructure arises from the Fiber Optic Agreement. Undisputedly, the bank was not a party to the Fiber Optic Agreement. Rather, the only signatories to the Fiber Optic Agreement were PFD and Media One. It follows as a basic proposition that, as a non-party to the Fiber Optic Agreement, the bank cannot be bound by the agreement and cannot be compelled

to perform PFD's obligations under the Fiber Optic Agreement.  See *AFSCME Council 25*, 292 Mich App at 80; see also *Booth v Dingley*, 148 Mich 197, 202; 111 NW 851 (1907).

In contrast to this conclusion, Media One asserts that the bank's consent to the easements rendered the bank liable for PFD's obligations under the Fiber Optic Agreement, as a successor to the Fiber Optic Agreement, in the event of a foreclosure.  In particular, because the easement is "subject to" the Fiber Optic Agreement, Media One maintains that, by signing the consent and agreeing to "honor and recognize" Media One's rights, the bank agreed to honor Media One's contractual right to payment under the Fiber Optic Agreement.  According to Media One, the bank's obligation to pay Media One under the Fiber Optic Agreement was triggered when the bank purchased the property at the foreclosure sale.

Considering the plain language of the three documents involved, Media One's circuitous argument is plainly without merit, and it is readily apparent that the bank's only intent in agreeing to the easement was to permit PFD to grant the easement for installation of the fiber optic cables and to ensure that this easement would survive in the event of foreclosure.  In relevant part, the most recent consent provides:

> MACATAWA BANK, a Michigan banking corporation . . . being the mortgagee and secured party pursuant to the Mortgages between [the bank], as mortgagee, and [PFD], as mortgagor, which has been recorded in Liber 4635, at Page 505 on September 2, 2004 . . . in the Ottawa County Records, . . . consents to the attached [easement] dated as of August 15, 2006 and agrees that it shall honor and recognize the releases and rights made and granted by that [easement].

Considering the language of this consent, it is clear that the bank only agreed to the creation of the easement and not the assumption of PFD's contractual indebtedness to Media One under the Fiber Optic Agreement.  To begin with, in ascertaining the parties' intent, it is notable that the consent identifies the bank as "being the mortgagee and secured party" in connection with a previously recorded mortgage.  This reference to the bank as "mortgagee and secured party" relative to PFD as "mortgagor" makes plain that the bank executed the consent document, not as a party assuming PFD's contractual obligations under the Fiber Optic Agreement, but as a mortgagee with a superior recorded interest in the property and the ability to otherwise cut-off the proposed easement in the event of foreclosure.[5]  In other words, absent the bank's consent as

---

[5] Michigan is a race-notice state, wherein the holder of an interest in land, including a mortgage or lien, "can protect his or her interest by properly recording it, and the first to record an interest typically has priority over subsequent purchasers or interest holders."  *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 96; __ NW2d __ (2016).  Following a foreclosure, if the property is not redeemed, under MCL 600.3236, the purchaser receives "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage . . . ."  The effect is to "extinguish[] any 'right, title, and interest' created subsequent to the creation of the mortgage being foreclosed upon[.]"  *In re Receivership of 11910 S Francis Rd (Price v Kosmalski)*, 492 Mich 208, 223; 821 NW2d 503 (2012).  However, parties holding superior interests in property may agree to waive the statutory right of priority and consent to giving someone else a superior

-4-

mortgagee, PFD could not grant an easement to Media One that could be enforced against the bank and, if the bank did not explicitly agree to "honor and recognize" the rights granted by the easement, the easement would not survive in the event of foreclosure. See *Hanson*, 339 Mich at 134. Thus, as a general matter, when the bank gave its "consent" as "mortgagee and secured party" and agreed to "honor and recognize" the rights granted by the easement, the purpose of the consent document was to ensure that Media One received a valid easement, which would not be extinguished in the event of foreclosure.

While conceding that the bank's consent was necessary for the creation of the easement, Media One nevertheless attempts to transform this plainly worded consent into an assumption of pecuniary liability by endeavoring to finagle a link between the consent and the Fiber Optic Agreement. First, Media One argues that the phrase "honor and recognize," as used in the consent evinces the bank's intent to "honor and recognize" Media One's right to payment under the Fiber Optic Agreement. But, clearly this is not so for the simple reason that the bank did not agree to "honor and recognize" the Fiber Optic Agreement; rather, the bank agreed to "honor and recognize" *the rights granted by the easement*. "An easement is the right to use the land of another for a specified purpose," *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007); and, "the conveyance of an easement gives to the grantee all such rights as are incidental or necessary to the reasonable and proper enjoyment of the easement" as determined from the language of the easement document, *Blackhawk Dev Corp v Vill of Dexter*, 473 Mich 33, 41-42; 700 NW2d 364 (2005). Turning to the easement in this case, it is clear that Media One's right to payment is not a right granted by the easement. Instead, as set forth in the easement, the rights granted to Media One consisted of rights to enter the property and to use it for purposes of installing and maintaining fiber optic lines.[6] Thus, by agreeing to "honor and recognize" the rights granted by the easements, the bank agreed to do nothing more than honor and recognize Media One's right to use the property for these specific purposes. While Media One contends that such an understanding of "honor and recognize" somehow renders the terms meaningless, as discussed, had the bank not agreed to honor and recognize the rights granted by the easement, the bank could have extinguished the easement by foreclosure. See *Hanson*, 339 Mich at 134; *Dolese v Bellows-Claude Neon Co*, 261 Mich 57, 61; 245 NW 569 (1932).

Second, Media One emphasizes that the easement is "subject to" the Fiber Optic Agreement, which, according to Media One, somehow renders the bank liable for the Fiber Optic Agreement. This argument is also unavailing. As noted, the bank only agreed to "honor and recognize" the rights *granted by the easement*. And, the phrase "subject to," as used in the easement, does not denote a grant of rights to Media One. See *Englestein v Mintz*, 345 Ill 48, 61;

interest, provided that the mortgagee makes this waiver unequivocally. See *id*. at 228, 230; *Shapero v Picard*, 235 Mich 481, 487; 209 NW 576 (1926). For this reason, absent consent from a mortgagee, an easement granted by a mortgagor after the execution of a mortgage will not survive foreclosure. *Hanson v Huetter*, 339 Mich 130, 134; 62 NW2d 663 (1954).

[6] More fully, the easement provided Media One with "the right to enter upon sufficient land adjacent to the same, owned by [PFD], as is required for the construction, installation, maintenance, repair, replacement, reinstallation, operation, and inspection of said utility lines." This right of entry to install and maintain utility lines also included the right to excavate a trench or ditch and to remove trees and other obstructions.

177 NE 746 (1931) ("The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights."). Rather, the phrase "subject to" denotes a limitation on a grant, in this case a limitation on the easement. See *Netahla v Netahla*, 301 Kan 693, 699; 346 P3d 1079 (2015); *Cockrell v Texas Gulf Sulphur Co*, 157 Tex 10, 17; 299 SW2d 672 (1956); *Winberry v Salisbury*, 5 NJ 240, 244; 74 A2d 406, 408 (1950). Thus, while the "subject to" language in the easement indicates some interaction between the Fiber Optic Agreement and the easement, see *Mayor of Lansing v Michigan Pub Serv Com'n*, 470 Mich 154, 160 & n 4; 680 NW2d 840 (2004), the phrase does not grant Media One any rights of payment which are enforceable against the bank by virtue of the bank's agreement to "honor and recognize" the rights granted by the easement.

Ultimately, Media One's right to payment for its fiber optic services arises from the Fiber Optic Agreement between Media One and PFD. Even when all of the documents are considered, there is simply no indication that the bank agreed to perform PFD's obligations under the Fiber Optic Agreement, and in the absence of the bank's clearly expressed intent to do so, we will not assume such a substantial undertaking.[7] See *Bandit Indus, Inc*, 463 Mich at 512-514. Absent a showing that the bank has a contractual obligation to pay PFD's indebtedness to Media One under the Fiber Optic Agreement, Media One's claim for breach of contract against the bank is clearly unenforceable and the trial court properly granted summary disposition to the bank.

Affirmed. Having prevailed in full, appellees may tax costs pursuant to MCR 7.219.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

[7] There is also no merit to Media One's suggestion that the bank became a successor to the contract at the time of foreclosure. As a general rule, the purchaser at a foreclosure sale is under no obligation to perform the previous landowner's contractual obligations. 7 Fletcher Cyc. Corp. § 3331. See also *Kraushaar v Bunny Run Realty Co*, 298 Mich 233, 240; 298 NW 514 (1941). While the bank now owns the property, the bank did not acquire PFD's interest in the Fiber Optic Agreement, and thus there is no privity of contract which would render the bank liable for breach of contract as a successor to the Fiber Optic Agreement. See generally *Detroit, T & IR Co v WU Tel Co*, 200 Mich 2, 8; 166 NW 494 (1918); *Riverbend Inv'rs v Progressive Surface Preparation, LLC*, 255 Mich App 327, 335; 660 NW2d 373 (2003). Further, insofar as Media One suggests that the right to payment under the Fiber Optic Agreement was intended to "run with the land," this argument alluding to the creation of a covenant is insufficiently briefed and therefore abandoned. See *Dunn v Bennett*, 303 Mich App 767, 775; 846 NW2d 75 (2013).